## WILLIAMS et al. v. O. K. CONST. CO., Inc., et al. *

### No. 4664.

Court of Appeal of Louisiana. Second Circuit.

Jan. 3, 1934.

Isaac Wahlder, of Alexandria, for appellants.

Thornton, Gist & Richey, of Alexandria, for appellees.

TALIAFERRO, Judge.

The O. K. Construction Company, Incorporated, a defendant herein, had a contract with the federal government to do some finishing work to a section of levee on Red river, in the parish of Avoyelles. The work consisted of filling in rain and wave washes and resodding and dressing the surface of the levee. This company carried workmen's compensation insurance with the United States Fidelity & Guaranty Company, the

*Rehearing granted February 5, 1934.

other defendant. A part of this contract was sublet to Ben Willson. Among others, he employed Henry Williams to perform labor necessary to execute his part of the contract. In connection with and incidental to the employment of the laborers who lived in or near the city of Alexandria, several miles north of the location of the work, Willson agreed and obligated himself to transport them, free of charge, every Saturday evening to their homes, and, in like manner, convey them back to his work camp the following Sunday evening, so they could resume work on Monday.

On August 21, 1932, a truck of Willson's loaded with his laborers, en route from Alexandria to the camp where they ate and slept, ran off of the highway, turned over, and Williams was killed. His mother and father, alleging themselves to be his sole dependents, instituted this suit against the above-named defendants to recover compensation, and an amount for burial expenses of the deceased. It is alleged that the construction company was engaged in a hazardous occupation, to wit, excavating and grading with power machinery and building of levees, bridges, and roads, and that it had a contract with the United States to build the levee above referred to; that the nature of the relations between the construction company, Ben Willson, and deceased was such that under section 6 of the Workmen's Compensation Law (Act No. 20 of 1914, § 6, as amended by Act No. 85 of 1926), the construction company and its said surety are responsible to plaintiffs for payment of the compensation sued for; that deceased met death while performing services arising out of and incidental to his employment in the course of the business of said Willson and the construction company.

It is further alleged that deceased was a widower, 27 years old, without children, and that he lived with and supported petitioners, who are 48 and 63 years old, respectively, and in necessitous circumstances, unable to do manual labor; that they were actually and wholly dependent upon the earnings of deceased for subsistence when he was killed.

Defendants admit that the O. K. Construction Company, Inc., is engaged in a hazardous business, as alleged by plaintiffs, and that it had a contract with the United States to build the levee, as alleged, and that a part of the contract had been sublet to Ben Willson, but deny specifically that Henry Williams, when killed, was subject to and entitled to the benefits of the Workmen's Compensation Law. A general denial is made to all the material allegations of fact relied on by plaintiffs to recover. The construction company further alleged that, if it should be held to be a principal in this suit, under the provisions of section 6 of the Workmen's Compensation Law, and liable to plaintiffs for any amount, it is entitled to be indemnified by its subcontractor, Ben Willson, and therefore would be entitled to the same judgment against him as might, or may be, recovered by plaintiffs against respondents or either of them; and, in the alternative, such a judgment is prayed for against Willson. This defendant further avers that, under paragraph 4, § 6, of the Compensation Law, it is entitled to call said Willson into this suit, as codefendant, and, under appropriate prayer, this was done.

Defendants, on information and belief, allege that one David K. Cooper was a cosubcontractor with Willson, and he was also ordered called as warrantor and codefendant, and served. However, there appears to have been no foundation in fact for such information. The suit as to him was dismissed, and he passed out of the case. Willson filed an exception of no cause and no right of action to the call in warranty made upon him. This does not appear to have been acted on by the court. Reserving his rights under this exception, Willson answered plaintiffs' petition and defendant's call in warranty. He admitted that the O. K. Construction Company was engaged in a hazardous business, and that he was subcontractor of a portion of the levee work covered by its contract with the federal government. He admitted that Henry Williams was in his employ when killed, but denied that he was then subject to the Workmen's Compensation Law, and denied the right of defendants to call him in warranty, alleging that, if any liability exists, it is covered by the policy issued by the United States Fidelity & Guaranty Company and that there is no liability on his part, in warranty, or otherwise, under said policy or under the laws of the state, to either defendant; that any liability there may be to plaintiffs is expressly assumed and contracted for by said surety company, under the terms of said policy and the laws of the state.

When the case was called for trial, defendants offered to file an amended and supplemental answer, which is in the following language: "That in its original answer herein, it is admitted that the O. K. Construction Company, Inc., was engaged in a hazardous business under the Compensation Law; that it denied that plaintiff's son, Henry Williams, was employed by said O. K. Construction Company, Inc., and has denied that the said Henry Williams died as result of an accident arising while performing services arising out of and incidental to his employment, and it now desires to further amend and supplement its said allegations of its original answer herein, and to aver that Ben Willson, the employer of the said Henry Williams, deceased, was not engaged in a hazardous occupation under defendant, under the Compensation Law, for the reason that the contract let to and undertaken by the said Willson was not work in which machinery was necessary or used in grading and building said levee, and

that the said Willson, the employer of the said Henry Williams, deceased, was not engaged in a hazardous business under the provisions of the Compensation Law."

On objection of plaintiffs' counsel that the amendment came too late, that it changed the issues and contradicted some of the allegations of the original answer, the amendment was not allowed filed by the court.

Defendant then, over objection of plaintiffs' counsel, filed an exception of no cause and no right of action, which was argued and overruled. Upon the issues tendered by these pleadings, the case was tried on the merits, resulting in a judgment for defendants and the warrantor, rejecting plaintiffs' demands and dismissing their suit. They have appealed.

The trial judge did not give written reasons for his judgment. We do not know which of the many defenses urged against plaintiffs' right to recover was sustained by him. Briefs of counsel do not enlighten us on the subject.

Section 6 of the Workmen's Compensation Law of 1914, as amended, under which plaintiffs seek to hold defendants directly responsible to them for compensation herein, reads: "That where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or his dependent any compensation under this act which he would have been liable to pay if that employee had been immediately employed by him."

■ This law unquestionably gives the injured employee, or his dependents, in event of his death, the right to ignore the contractor and bring suit against the principal, as was done in this case. It has been so construed in many cases. Seabury v. Arkansas Natural Gas Corp., 14 La. App. 153, 127 So. 25.

■ The right of a principal contractor, when sued by an employee of the subcontractor, to implead the subcontractor as co-defendant or warrantor is definitely authorized by paragraph 4 of section 6 of the Compensation Law. This provision is discussed and upheld in Jones v. Louisiana Oil Refining Corp., 3 La. App. 85.

If the employee is successful in his suit against the principal, the contractor is entitled to recover the same judgment against the subcontractor.

It is conceded that the issues of the case, as between plaintiffs and defendants, are:

(1) Is the work Willson was obliged to perform and did perform, under his contract with O. K. Construction Company, included under the provisions of the Compensation Law as one of the classes of trades, businesses, or occupations specifically named in said act as being hazardous?

(2) If this question is answered in the affirmative, then was the deceased, Henry Williams, killed as a result of an accident arising out of and in the course of his employment while riding on Willson's truck, returning to the work camp for the purpose of resuming work the following morning?

(3) If this last issue is decided for plaintiffs, then it must be determined if they were partially or totally dependent upon their deceased son when he was accidentally killed.

Defendants specifically admitted that the O. K. Construction Company was engaged in a hazardous business, within the meaning and purview of the Workmen's Compensation Law, and sought to amplify its position on this issue by an amended answer, wherein it was alleged that Ben Willson, the employer of deceased, was not engaged in a hazardous business in executing his contract with O. K. Construction Company. This was disallowed. We find it unnecessary to pass upon the correctness of the lower court's action in this respect, because there is in the record, without objection on part of plaintiffs, in fact some of it was introduced by them, evidence which definitely establishes that the particular work this defendant was obligated to perform under its contract with the federal government, a part of which was sublet to Willson, was not hazardous, because it did not require excavating or grading with power machinery, as is alleged by plaintiffs. In other words, considering the admission of defendants, above referred to, and this testimony, it is established that the construction company does engage in a hazardous business, namely, levee construction with power machinery (this is admitted in defendant's brief), but that this particular contract could be fulfilled, and was fulfilled, without the employment of means and instrumentalities that would have characterized it a hazardous business under the law.

■ It has been settled by many decisions of our courts that it is the character of business of the employer, and not necessarily the nature of the particular work or service the employee was engaged in when injured, that determines his right or lack of right to recover compensation. If the master's business is hazardous, under the statute, but the employee is injured while performing some act merely incidental to the main business, non-hazardous in its nature, he is entitled to recover. The extent of the employee's right to recover against the principal, under section 6 of the act, is the same as it would have been if he had been injured while working for the principal. In other words, the law

does not look exclusively to whether the contractor was engaged in a hazardous occupation when the employee was injured, in order to determine the right of the employee to recover for his injuries, but does look to the character of the business of the principal to determine the injured employee's rights; and it specifically says that "the principal shall be liable to pay to any employee * * * or his dependent any compensation under this act which he would have been liable to pay if that employee had been immediately employed by him."

■ Therefore, since it is established that the construction company is engaged in a hazardous business, the deceased was subject to the Compensation Law while working for Willson, the subcontractor.

■ Plaintiffs' counsel also makes the point that, in view of the fact that Willson employed trucks and other motor vehicles in the execution of his contract with defendant, this impressed his business to that extent as being hazardous within the meaning of the Compensation Law. We believe the point well taken. The operation of engines and other forms of machinery is decreed by the statute to be a hazardous occupation or trade.

In Haddad v. Commercial Motor Truck Co., 146 La. 897, 84 So. 197, 9 A. L. R. 1380, it was held that, where an employee was killed while driving a motortruck in his employer's business, death occurred while decedent was engaged in the operation of an "engine and other forms of machinery."

■ On the second issue herein, we have found no case or authority which holds that an injured employee is entitled to compensation where the facts are as presented in the case at bar; nor have we found any case or authority that says compensation is not due, under such facts. There are many cases, and an abundance of authority, which hold that, where the employer has agreed, expressly or otherwise, as a part of or as an incident to the contract of employment, that he will transport the employee daily to and from his work, the employment begins when the trip to work begins, and that, if injury befalls the employee on the trip to work, it arises out of and in the course of the employment. In the present case deceased had ceased labor for the week-end and was being conveyed back to the scene of his labors, by the subcontractor, pursuant to agreement, when killed. In principle we cannot see that there is any difference between this case and the line of cases referred to above. After all, it may truthfully be said that deceased was being carried to his work by Willson, when killed. If this had not been true, he would not have been on the truck when it turned over. He was on the truck because of his employment with Willson; and it requires no stretch of the law, or of the imagination, to say that the accident happened while he was "performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation."

The evidence is conflicting as to the extent plaintiffs were dependent upon their deceased son for support. It certainly was not total. It does fairly appear that he made contributions of money and groceries to them. He lived with them when his work did not require him to be absent. He was earning not over $7.50 per week. In view of all the facts and circumstances of the case, we think the minimum of $3 per week for 300 weeks is sufficient.

■ Plaintiffs sue for burial expenses and incidentals to the amount of $150. The total of the bill in the record is $164.50. No one, not even plaintiffs, authorized the undertaker to incur a bill of this magnitude, in fact, none at all; and we are convinced it is not all genuine. It is inconceivable that any one would make outlays of this character to the amount named on a negro man, without estate, and especially in the face of his employer positively not agreeing to pay it. There is in the record some evidence that the undertaker stated he could put the deceased away for $50. We think this ample for the services rendered and burial equipment supplied.

Defendants have not mentioned in brief or oral argument their call in warranty on Willson. We assume it has been abandoned. We shall so treat it.

For the reasons herein assigned, the judgment appealed from is reversed, annulled, and set aside; and there is now judgment for plaintiffs against the O. K. Construction Company, Incorporated, and the United States Fidelity & Guaranty Company in solido for compensation at the rate of $3 per week for 300 weeks, beginning August 21, 1932, with 5 per cent. per annum interest on each payment from date due; and judgment for $50 for funeral expenses, etc., with 5 per cent. per annum interest from August 21, 1932, until paid; all costs to be paid by defendants.